N THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| AVIVA LIFE AND ANNUITY COMPANY, AND AVIVA LIFE AND ANNUITY COMPANY OF NEW YORK, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 4:12-CV-603 |
| v. | ) ) | |
| STEVEN H. DAVIS, STEPHEN DICARMINE, and JOEL SANDERS, | ) | |
| Defendants. | | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO RECONSIDER DENIAL OF MOTION TO DISMISS OR, ALTERNATIVELY, TO CERTIFY ISSUE FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

Defendants Steven H. Davis, Stephen DiCarmine, and Joel Sanders ask this Court to reconsider its May 19, 2014 Order denying Defendants' motions to dismiss. In its Order, the Court decided that, despite Aviva's express assignment of its right to bring securities claims, Aviva still has standing to bring those same claims because of potential evidentiary issues that could arise if Aviva's ultimate assignee were to pursue the claims. Yet this is a concern that can never materialize. Defendants provided uncontroverted proof that the ultimate assignee, LJF Holdings, fully released all claims relating to the transferred securities, including securities claims, and is subject to a federal court injunction prohibiting it from asserting them in any forum. Defendants ask this Court to reconsider its finding in light of this undisputed fact.

Moreover, the Court's holding is inconsistent with the rationale of *Blue Chip*. *Blue Chip* (which did not even involve an assignment of claims) did not hold that an express assignment of securities claims is inoperable as a matter of law. In addition, *Blue Chip* and cases applying *Blue Chip* required that *both* policy concerns identified by the Supreme Court—the danger of

1

vexatious litigation *and* evidentiary concerns—be present to deny an assignee the right to pursue an expressly assigned securities claim.  This Court, however, found that *Blue Chip*'s primary concern—the danger of vexatious litigation—was not demonstrated here.  Without this first factor being present, the Court's decision to confer standing on Aviva, notwithstanding the assignment of its claims, is contrary to the rationale of *Blue Chip*.  For these reasons, Defendants request that the Court reconsider and reverse its Order denying Defendants' motions to dismiss.

Alternatively, to the extent this Court declines to reconsider its ruling, Defendants request that the Court certify its ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) so that the Eighth Circuit, which has never addressed this issue, can consider whether a party that expressly assigns all rights to securities, including its right to bring securities claims, nonetheless still has standing to pursue a securities claim.  This involves a controlling question of law, and the answer will determine whether Aviva's case proceeds or is immediately dismissed for lack of subject matter jurisdiction.  Efficiency dictates that the appeal be taken now.  The Court and the parties will be spared considerable time, effort, and cost if the Court certifies its ruling now, rather than requiring Defendants to wait to appeal this decision until this Court enters a final judgment in the case.

Certification now would be particularly helpful to ultimate resolution of this case, given Defendants' request that this Court stay proceedings in this case pending the outcome of criminal proceedings against Defendants.  If the appeal is certified and the stay granted, the Eighth Circuit could address an important, controlling question of law that could fully dispose of the case while the criminal case proceeds.[1]

_____

[1] Defendants moved to stay all proceedings in this case on May 30, 2014 pending the outcome of the criminal proceedings. (Dkt. 86.)  To the extent the Court enters the stay, Defendants request the Court nonetheless consider their reconsideration motion and request for certification, which

## BACKGROUND

Aviva sold the securities at issue in this case in May 2012 to Sea Port Group Securities, LLP pursuant to a written sales agreement that expressly states the sale includes both the "Securities" and the "Transferred Rights," which included,

> [A]ll claims . . . , suits, causes of action, and any other right of [Aviva], whether known or unknown, against the Issuer, MNP, or any of their respective Affiliates, agents, representatives, contractors, advisers, or any other Person that in any way is based upon, arises out of or is related to any of the foregoing, including . . . claims under any law governing the purchase and sale of, or indentures for, securities . . . .

(Dkt. 55-1, Davis Br. at 4.) In its May 19, 2014 Order, the Court properly found this language constituted an express assignment of Aviva's present claims against Defendants.  (Dkt. 85, Ord. at 10.)  To determine whether it would nonetheless allow Aviva to bring the claims at issue, the Court applied policy concerns raised by the Supreme Court in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)—a case that did not involve an express assignment, or indeed any assignment at all.[2]  (Ord. at 11.)  The Court first found that "the vexatious litigation concern cannot be demonstrated." (*Id.*)  The Court concluded the record was void of any indication that assignees have any desire "to bring any type of litigation, vexatious or not . . . ." (*Id.*) The Court noted that "in fact, Sea Port Group sold the securities at issue to another entity with no attempt disclosed in this record to bring any type of suit against Defendants." (*Id.*) The Court nonetheless did not give effect to Aviva's express assignment because of the potential evidentiary concerns

---

involve pure issues of law and will not impact Defendants' ability to invoke their Fifth Amendment rights and other concerns raised in the stay motion.

[2] In *Blue Chip*, the Supreme Court held that only buyers and sellers of stock had standing to sue under federal securities law. The Court raised two policy concerns in support of this holding: (1) "the danger of vexatious litigation which could result from a widely expanded class of plaintiffs under Rule 10b-5," and (2) evidentiary issues associated with cases brought by plaintiffs not directly connected to the alleged fraudulent conduct or transaction. *Id*. at 740-42.

that would result if the assignees ever pursued litigation. (*Id.*) Accordingly, the Court found

Aviva had standing to assert the claims in this lawsuit.  (*Id.* at 12.)

## ARGUMENT

### I.    THE COURT'S MAY 19, 2014 ORDER IS PREMISED ON ERRONEOUS FINDINGS OF FACT AND CONCLUSIONS OF LAW.

Defendants urge this Court to reconsider its conclusion that Aviva has standing to pursue

its securities claims, even though Aviva sold the underlying securities and expressly assigned its

securities claims to a third party.   Under Federal Rule of Civil Procedure 54(b), a court may

revisit any interlocutory order at any time before the entry of final judgment.  Fed. R. Civ. P.

54(b); *Wells' Dairy, Inc. v. Travelers Indem. Co. of Ill.*, 336 F. Supp. 2d 906, 909 (N.D.  Iowa

2004).   Motions to reconsider interlocutory orders under Rule 54(b) are governed by a "less

exacting" standard than the more rigorous standards applied to motions to reconsider a final

judgment under Rules 59(e) or 60(b).  *Jones v. Casey's Gen. Stores*, 551 F. Supp. 2d 848, 854

(S.D. Iowa 2008).   A court may reconsider an interlocutory order to "correct any 'clearly' or

'manifestly' erroneous findings of fact or conclusions of law." *Id.*

In denying Defendants' motions to dismiss, the Court found that despite Aviva's express

assignment of its securities claims, it nonetheless maintained Article III standing to pursue its

claims against defendants.  (Ord. at 11.)  The Court's holding is based on factual and legal

errors:  First, the Court's finding that upholding Aviva's assignment would result in potential

evidentiary issues is a clearly erroneous finding of fact.  Second, the Court erred by holding that

*Blue Chip* rendered the express assignment of a securities claim inoperable as a matter of law

and by conferring standing on Aviva to pursue its claims when it found only one *Blue Chip*

factor was present.

**A.      The Court Made A Clearly Erroneous Finding Of Fact When It Found That Aviva's Assignment Will Result In Potential Evidentiary Issues.**

In denying Defendants' motions to dismiss, this Court erroneously found that potential evidentiary issues could arise if Aviva's express assignment were given effect.  After ruling that Aviva had in fact expressly assigned its rights, the Court considered whether it would give effect to Aviva's express assignment in light of *Blue Chip*'s two policy concerns.   The Court acknowledged that "the vexatious litigation concern cannot be demonstrated" but nevertheless refused to give effect to Aviva's express assignment because the evidentiary issues created by the assignment "are apparent." (Ord. at 11.)  Other than to note that any claim by the assignee would "require the involvement of Plaintiffs to prove its case," *id*., the Order does not identify what those evidentiary concerns are.

The Court's holding is based on a concern that does not exist given the undisputed factual record of this case.  The record is void of any indication that Aviva's assignee has a desire to or ever would attempt to bring litigation against Defendants.  Indeed, as this Court noted elsewhere in its Order, "Sea Port Group sold the securities at issue to another entity with no attempt disclosed in this record to bring any type of suit against Defendants." (*Id*.)  Moreover, Aviva does not dispute that the final purchaser of the securities, LJF Holdings, released all claims against Defendants, and the Bankruptcy Court entered an order enjoining it from asserting such claims against Defendants. (Davis Br. at 9.)

The Court's conclusion that enforcing Aviva's assignment would create "evidentiary issues" in securities litigation brought by the assignee cannot be squared with the fact that LJF Holdings cannot bring any securities claims against Defendants.  Without the potential for subsequent litigation, there is no risk that such evidentiary issues would ever arise.  The Court's failure to account for this release is not supported by the record and therefore warrants

5

reconsideration. *See, e.g.*, *Reynolds v. Fed. Express Corp.*, 2012 WL 2089952 (W.D. Tenn. June 8, 2012), *aff'd*, 544 F. App'x 611 (6th Cir. 2013) (granting motion for reconsideration under Rule 54(b) where court overlooked material facts); *see also Plymouth Cnty., Iowa v. MERSCORP, Inc.*, 287 F.R.D. 449, 456 (N.D. Iowa 2012) ("Rule 59(e) motion to 'reconsider' may . . . be granted where the court overlooked a factual or legal *argument* presented by a party. . . .").

**B.     The Court Made Manifestly Erroneous Conclusions Of Law By Invalidating Aviva's Express Assignment Under *Blue Chip* Despite Finding No Risk Of Vexatious Litigation.**

This Court also made two manifest legal errors when it ruled that under *Blue Chip*, Aviva retained standing to pursue its securities claims. *See Dille v. Renaissance Hotel Mgmt. Co.*, 2012 WL 5866630 (E.D. Mo. Nov. 19, 2012) ("manifest error" for purposes of a Rule 59(e) motion is demonstrated by "wholesale disregard, misapplication, or failure to recognize controlling precedent") (citing *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)).

*First*, this Court erred by holding that "*Blue Chip* renders [the] assignment inoperable as a matter of law." (Op. at 11.) *Blue Chip* never held that an assignment was inoperable as a matter of law. Indeed, *Blue Chip* did not even involve an assignment or an assignor that sought to avoid the effect of its own express assignment. The Supreme Court instead simply addressed whether buyers and sellers of stock had standing to sue under federal securities law. *Blue Chip*, 421 U.S. at 740-42. This Court's reliance on *Blue Chip* to find the assignment "inoperable" is contrary to *Blue Chip*'s holding and warrants reconsideration.

*Second*, this Court erred by conferring standing on Aviva when it found only one *Blue Chip* factor present. *Blue Chip* rested on *two* policy concerns—fear of vexatious litigation and risk of evidentiary issues—as the basis for limiting standing to initial purchasers of securities. *Blue Chip*, 421 U.S. at 740 ("[T]he concern expressed for the danger of vexatious litigation which could result from a widely expanded class of plaintiffs under Rule 10b-5 . . . [has] *two*

largely separate grounds.") (emphasis added); *id.* at 749 (concluding that these *two* "considerations of policy" led the court to determine that the rule limiting 10b-5 actions to sellers and purchasers of securities "is a sound rule and should be followed").  In all of the district and appellate court cases cited by the parties, courts applying the *Blue Chip* analysis to situations in which an assignee—not an assignor, as is the case here—sought to pursue securities claims refused to confer standing on an assignee only after finding that <u>both</u> *Blue Chip* factors were present.  *See, e.g.*, *Smith v. Ayres*, 977 F.2d 946, 950 (5th Cir. 1992); *Dobyns v. Trauter*, 552 F. Supp. 2d 1150, 1156-57 (W.D. Wash. 2008).  In *Dobyns*, for example, the court found both that "the 10b-5 claim was added to the larger lawsuit as a nuisance to the . . . Defendants" and that "the evidentiary problems associated with [the] case are of the type that the Supreme Court sought to avoid in *Blue Chip*."  *Dobyns*, 552 F. Supp. 2d at 1156.  Similarly, in *Smith*, the Court explicitly noted that the express assignment "b[ore] all the hallmarks of a strike or nuisance suit, the very actions which the *Blue Chip Stamps* decision seeks to reduce or eliminate" *and* that the assignee would face evidentiary obstacles in proving his case.  *Smith*, 977 F.2d at 950. Defendants are not aware of any case where a court declined to give effect to an assignment where only one *Blue Chip* concern was present.[3]

Requiring both *Blue Chip* concerns to be present makes sense.  The paramount concern is the risk of vexatious litigation.  But absent such a risk, concerns about evidentiary issues are immaterial.  Here, this Court found no risk of vexatious litigation.  Thus, the first concern identified in *Blue Chip* does not arise.  This Court's conclusion that Aviva's assignment is invalid based <u>solely</u> on the potential that it would create evidentiary issues is inconsistent with

---

[3] Nor has any party cited any case in which an *assignor* that explicitly transferred its securities claims was found to retain standing, or any case in which the securities themselves were held to have been transferred independently of any securities claims relating to them.

*Blue Chip* and all cases applying *Blue Chip*.  *See Stults v. Bush Boake Allen, Inc.*, 2014 WL

775525 (N.D. Iowa Feb. 25, 2014) (granting motion to consider under Rule 59(e) where court

made a clearly erroneous conclusion of law); *DeTemple v. Leica GeoSystemes, Inc.*, 2009 WL

3617616 (E.D. Wis. Oct. 29, 2009) (granting Rule 59(e) motion to reconsider under Rule 59(e)

where court misapplied the law in previous order); *Thomas v. Corey*, 2008 WL 5381868 (E.D.

Mo. Dec. 22, 2008) (granting 59(e) motion to reconsider where court committed a manifest error

of law).

## II.    ALTERNATIVELY, THE COURT SHOULD CERTIFY ITS RULING FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B).

In the alternative, pursuant to Federal Rule of Appellate Procedure 5(a)(3) and 28 U.S.C.

§ 1292(b), Defendants request that the Court certify its Order denying Defendants' motions to

dismiss for immediate interlocutory appeal. Such certification is warranted where an order

involves: (1) "a controlling question of law"; (2) "as to which there is substantial ground for

difference of opinion"; and (3) "an immediate appeal from the order may materially advance the

ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see also Union Cnty., Iowa v. Piper

Jaffray & Co.*, 525 F.3d 643, 646 (8th Cir. 2008) (quoting *White v. Nix*, 43 F.3d 374, 377–79

(8th Cir. 1994)).  All of these requirements are met here.

### A.    This Court's Opinion Involves A Controlling Question Of Law That Should Be Certified Under Section 1292(b).

Whether Aviva—after expressly assigning its securities, along with its right to bring a

securities claim—still has standing to pursue such a claim is a controlling question of law.  "[A]

question of law is 'controlling' if reversal of the district court's order would terminate the

action."  *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990); *Katz v. Carte

Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (a question is "controlling" if error in its

resolution would warrant dismissal); *APCC Servs., Inc. v. AT & T Corp.*, 297 F. Supp. 2d 101,

105 (D.D.C. 2003) ("Controlling questions of law include issues that would terminate an action if the district court's order were reversed.").  Standing issues are controlling issues of law.  *See Forest Guardians v. Bureau of Land Mgmt.*, 188 F.R.D. 389, 396 (D.N.M. 1999) ("Standing is a controlling question of law, so it meets the first requirement of § 1292(b)."); *Klapper v. Commonwealth Realty Trust*, 662 F. Supp. 235, 236 (D. Del. 1987) ("Standing is a 'controlling question of law.' If the plaintiffs have no standing, the litigation will be terminated, and such questions are particularly well suited for an interlocutory appeal.").

Reversal of this Court's May 19, 2014 Order would leave Plaintiffs without standing and consequently would terminate the action entirely.  Accordingly, the first prong of certification under § 1292(b) is satisfied here.

**B.      There Are Substantial Grounds For A Difference of Opinion With Respect To The Court's Ruling.**

Substantial ground for difference of opinion exists if "the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions."  *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013); *see also Gopher Oil Co. v. Union Oil Co.*, 757 F. Supp. 998, 1004 (D. Minn. 1991) ("Based on the dearth of Minnesota precedent in this area, the court would welcome the guidance of the Eighth Circuit in the handling of this matter."); *Garrelts v. SmithKline Beecham Corp.*, 943 F. Supp. 1023, 1071 (N.D. Iowa 1996) (finding "substantial ground for difference of opinion" where "no court has yet decided the preemption issue"); *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("[C]ourts traditionally will find that a substantial ground for difference of opinion exists where . . . novel and difficult questions of first impression are presented . . . ." (internal quotations omitted)).

That is precisely the situation here. No other Eighth Circuit court has held that an *assignor* has standing to pursue a securities claim even after it expressly assigned his rights to another entity. Nor has any district or appellate court held that an assignor can avoid the consequence of an express assignment of its claims—under *Blue Chip* or otherwise—particularly where the ultimate assignee of those claims has released the defendants of all causes of action. The fact that there is no case law on this question warrants certification to the Eighth Circuit. *See Gopher*, 757 F. Supp. at 1004 (granting motion for certification under § 1292(b) where there was a dearth of case law on the issue to be certified); *Stearns v. NCR Corp.*, 2000 WL 34423090 (D. Minn. Oct. 11, 2000) (granting motion to certify under § 1292(b) where no Eighth Circuit opinion had addressed the precise issue).

Moreover, substantial authority outside this Circuit conflicts with this Court's holding. Defendants cited several cases where a court conferred standing on an assignee following the express assignment of claims. *See Farey-Jones v. Buckingham*, 132 F. Supp. 2d 92, 101-02 (E.D.N.Y. 2001); *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1371 (S.D. Fla. 1991) (conferring standing on assignee where the court found "no reason why a party who has been injured by the purchase or sale of a security in violation of Rule 10b–5 should not be entitled to expressly assign his claim in accordance with the general rule that claims are legally assignable"). Because strong arguments exist for reaching a different conclusion, the second prong of certification under § 1292(b) is also satisfied. *See*, *e.g.*, *Smith v. United HealthCare Servs., Inc.*, 2003 WL 22834865 (D. Minn. Nov. 26, 2003) (granting motion for certification under § 1292(b) where differing opinions existed with respect to the issue to be certified).

**C.    Resolution of the Question Presented Will Materially Advance The Ultimate Termination Of The Litigation.**

Finally, there can be no serious doubt that immediate interlocutory appeal, if successful, would materially advance the ultimate termination of the litigation because it could fully dispose of this action. Certification under § 1292(b) is proper "where a decision on appeal may avoid protracted and expensive litigation." *White*, 43 F.3d at 376. Section 1292(b) was enacted to address precisely the situation presented here where an immediate appeal may result in the termination of claims that would otherwise result in protracted discovery and a lengthy trial. A decision by the Eighth Circuit that Aviva lacks standing would dispose of its claims and avoid wasting substantial time and resources, particularly where Defendants otherwise intend to appeal this Court's ruling once the district court enters a final judgment. Moreover, certification is particularly appropriate in this case, where Defendants have requested the Court stay all proceedings pending the disposition of the criminal proceedings against Defendants. Therefore, the Eighth Circuit could decide this important, threshold question of law (and a question of first impression) while the criminal case proceeds.

## CONCLUSION

For all the foregoing reasons, and the reasons contained in the parties' prior briefing, Defendants request this Court reconsider its prior ruling that Aviva has standing to pursue securities claims against Defendants. Alternatively, should the Court decline to reconsider its decision, Defendants request for the reasons outlined in this memorandum that the Court certify its Order for interlocutory appeal to the Eighth Circuit.

Dated: June 16, 2014

/s/ Matthew G. Whitaker
WHITAKER HAGENOW & GUSTOFF LLP
Matthew G. Whitaker
400 East Court Avenue, Suite 346
Des Moines, IA 50309-2017
515-284-5001

*Counsel for Defendants Steven Davis, Stephen DiCarmine and Joel I. Sanders*

11

KIRKLAND & ELLIS LLP
Kevin T. Van Wart (Admitted *Pro Hac Vice*)
Diana M. Watral (Admitted *Pro Hac Vice*)
300 North LaSalle Street
Chicago, IL 60654-3406
312-862-2000

*Counsel for Defendant Steven Davis*

BRYAN CAVE LLP
Mary Beth Buchanan (Admitted *Pro Hac Vice*)
Austin V. Campriello (Admitted *Pro Hac Vice*)
Kathryn E. Gebert (Admitted *Pro Hac Vice*)
1290 Avenue of the Americas, 35th Floor
New York, NY 10104-3300
212-541-1074

*Counsel for Defendant Stephen DiCarmine*

HUGHES HUBBARD & REED LLP
Ned H. Bassen (Admitted *Pro Hac Vice*)
Kathryn A. Coleman (Admitted *Pro Hac Vice*)
Christopher Gartman (Admitted *Pro Hac Vice*)
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

*Counsel for Defendant*
*Joel I. Sanders*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on June 16, 2014, I had the attached document electronically transmitted to the Clerk of the Court using the ECF System for Filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to all registered counsel of record.

/s/ Matthew G. Whitaker